Citation Nr: 1452643 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 08-06 644 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: Eric A. Gang, Esquire


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

B. Elwood, Counsel
INTRODUCTION

The Veteran served on active duty from June 1972 to June 1976.

These matters initially came before the Board of Veterans' Appeals (Board) from a May 2007 rating decision of the Department of Veterans' Affairs (VA) Regional Office (RO) in St. Louis, Missouri. In that decision, the RO reopened and denied claims of service connection for bilateral hearing loss and tinnitus.

The Veteran testified before the undersigned at a September 2008 hearing at the RO (Travel Board hearing). A transcript of the hearing has been associated with his claims folder.

In October 2009, the Board granted the Veteran's petition to reopen the claims of service connection for bilateral hearing loss and tinnitus and remanded the underlying claims for further development.

The Board denied the underlying claims of service connection for bilateral hearing loss and tinnitus by way of a June 2012 decision. The Veteran appealed the Board's denials to the United States Court of Appeals for Veterans Claims (Court).

In February 2013, the Court set aside the Board's June 2012 decision and remanded the case for readjudication in compliance with directives specified in a February 2013 Joint Motion filed by counsel for the Veteran and VA. 

Pursuant to a settlement agreement in the case of National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F. 3d 1312 (Fed. Cir. 2013), the Board's June 2012 decision was identified as having been potentially affected by an invalidated rule relating to the duties of the Veterans Law Judge that conducted the September 2008 hearing. In order to remedy any such potential error, the Board sent the Veteran a letter in May 2014 notifying him of an opportunity to receive a new hearing. The Veteran subsequently indicated that he did not want a new hearing. 

In addition to the paper claims file, there are Veteran's Benefits Management System (VBMS) and Virtual VA paperless claims files associated with the Veteran's claims. The documents in these file have been reviewed and considered as part of this appeal.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

The Veteran contends that his hearing loss and tinnitus are related to exposure to loud noises in service associated with military weaponry and equipment with only occasional use of hearing protection. There is no evidence of any significant post-service occupational or recreational noise exposure. The Veteran has claimed that hearing loss and tinnitus both began in service and have continued in the years since that time, however there is some evidence to the contrary. For instance, the first post-service clinical evidence of hearing loss and tinnitus is not for many years after service and the Veteran has provided inconsistent statements concerning the onset of his claimed disabilities.

In an April 2000 letter, B. Thedinger, M.D. stated that the Veteran had progressive hearing loss which had been present for several years. Initially, "it was suspicious for noise damage when he was in the military," but there had been a progression during the previous 4 to 5 years and he had a "very strong family history of hearing loss." Thus, Dr. Thedinger concluded that the Veteran had a "genetic progressive sensorineural loss."

In January 2007, J. G. Neely, M.D. opined that it was likely ("at least as likely as not") that the Veteran's hearing loss was related to service. The physician explained that the Veteran had noise-induced hearing loss, but he did not provide any further explanation or reasoning for his opinion.

An April 2007 VA examination report includes an opinion that the Veteran's hearing loss was not related to service. This opinion was based on the fact that he was found to have normal hearing bilaterally both at the time of service entrance and upon separation from service. There were no documented complaints of hearing loss in his records. Thus, acoustic damage was absent in service.

Dr. Neely explained in a May 2007 letter that the Veteran's military occupation was a weapons location equipment repairman which required him to stand alongside of a 175 millimeter cannon and be exposed to the noise of an explosion associated with the firing of a 174 pound projectile. This type of exposure was likely ("at least as likely as not") to have caused his noise-induced hearing loss. Thus, the Veteran's hearing loss was the result of his military occupation because noise-induced hearing loss can be caused by as little as a one-time exposure to a loud sound. 

In August 2008, Dr. Neely explained that a complete copy of the Veteran's claims file had been reviewed and that he was diagnosed as having "noise exposure induced sensorineural hearing loss, in which genetics is known to predispose more intense loss." Dr. Neely opined that it was likely ("at least as likely as not") that the Veteran's hearing loss was consistent with primary noise-induced loss and was "service-connected." His discharge audiogram was slightly worse than his entrance audiogram.

The audiologist who conducted the June 2010 VA examination opined that the Veteran's hearing loss was not likely ("not as least as likely as not") related to service. The examiner explained that his hearing was normally bilaterally both upon entrance into service and upon separation from service. Also, there were no complaints of hearing loss in his records.

In January 2012, the Board sought to obtain an expert medical opinion through the Veterans Health Administration (VHA opinion) in accordance with the provisions of 38 C.F.R. § 20.901(a) (2014). Later that month, a VA physician reviewed the Veteran's claims file and opined that it was not likely ("less likely as not") that this hearing loss was related to service. He reasoned that a review of the service treatment records was negative for hearing loss incurred during service. Audiometric thresholds were normal when the Veteran entered service and at the time of his separation from service. Specifically, audiometric thresholds at the time of separation were completely normal at all frequencies tested from 500 Hertz through 6000 Hertz. There were no significant threshold shifts noted at any frequency that might suggest permanent (chronic) residuals of military noise exposure. Also, a review of service treatment records failed to show evidence of any complaints of hearing loss during service.

The VA physician further explained that a review of audiometric data following the Veteran's separation from service clearly documented bilateral progressive hearing loss that appeared to have occurred many years subsequent to his separation from service. Specifically, he noted Dr. Thedinger's 2000 opinion and Dr. Neely's 2007 opinion and he concluded that after a careful assessment of available information in the claims folder, there was no evidence whatsoever that either hearing loss (to include "a pattern of hearing loss") or significant threshold shifts were noted at any time during service. The discharge audiogram was not slightly worse than the entrance audiogram and there was no statistical difference whatsoever between the audiometric levels at the time of service entrance and the time of separation from service. Hearing loss caused by military noise exposure would have occurred at the time of exposure and not many years later. Although there was no question that the Veteran was exposed to noise in service, there was no evidence that his hearing was affected by such exposure. The most likely etiology of his hearing loss was a combination of hereditary (genetic) and environmental factors that occurred subsequent to his separation from service.

The parties to the Joint Motion have agreed that the January 2012 opinion that the Veteran's hearing loss was due to hereditary (genetic) and environmental factors after service does not adequately account for the Veteran's reports regarding his family history and his history of noise exposure. Specifically, he has explained that although his father and grandmother had a history of hearing loss, his father was a gunner on a B-52 during World War II and his grandmother had lived alongside railroad tracks. Also, neither of these individuals reported any hearing problems until their 70s or 80s. The Veteran has not reported any other significant family history of hearing loss. Moreover, there is no evidence of any significant post-service occupational or recreational noise exposure. Therefore, a remand is necessary to obtain a new opinion as to the etiology of the Veteran's current hearing loss and tinnitus

In an April 2012 letter, C. Edwards, Aud., CCC-A opined that the Veteran's bilateral hearing loss was likely ("more likely than not") related to military noise exposure. She explained that although the Veteran's entrance and separation examinations indicated normal hearing, it was documented in the histopathology literature that outer hair cell damage in the cochlea occurs prior to an individual ever showing a threshold shift on an audiogram. Also, there was a 10 decibel decrease in the Veteran's hearing threshold at 2000 Hertz. Thus, even though thresholds did not exceed normal hearing, there was still an evident threshold shift noted when comparing the entrance examination to the separation examination.

Dr. Edwards again opined on an April 2012 "Hearing Loss and Tinnitus Disability Benefits Questionnaire" (VA Form 21-0960N-5) that it was likely ("at least as likely as not"/"50 percent probability or greater") that the Veteran's hearing loss was caused by service. This opinion was based upon a review of his medical records and the fact that he experienced unprotected noise exposure for 4 years.

In August 2014, Dr. Budoff explained that she had been practicing Otolaryngology for 28 years and that she had reviewed the Veteran's service treatment records and post-service medical records. She opined that it was likely ("more likely than not") that the Veteran's hearing loss was due to service. Dr. Budoff reasoned that the Veteran was repeatedly exposed to at least 140 decibels of sound (the decibel level of a gunshot blast) during service. It was documented that he was exposed to the discharge from rifles, pistols, and a 175 millimeter self-propelled gun when he either personally discharged his weapon or when he was around others when they discharged their weapon. He was also exposed to the loud sound of generators/air handlers in a closed space. It was known that prolonged exposure to sound over 85-90 decibels can result in permanent ear damage and hearing loss. Also, it had been shown that the acoustic energy in a single report from a high powered rifle is equivalent to almost 40 continuous hours of exposure to 90 decibels of sound, meaning that one discharge from a weapon is equivalent to one week of hazardous noise exposure.

There was evidence in peer reviewed literature that suggested that once damage (noted in the 1976 threshold shift in the Veteran's audiogram) and subsequent deterioration has begun in the spiral ganglion cells (specialized hearing cells), that there is corresponding damage and deterioration within the central nervous system higher up than the hearing nerve cells. This is characteristic of impulse noise, such as gunfire, that causes acoustic trauma. Once damage has occurred in the inner ear, it may progress upward through the auditory pathways of the brain. This is permanent, these cells do not regenerate, and acoustic trauma may occur from one single exposure to gunfire noise.

Dr. Budoff further explained that there was no documentation in the Veteran's medical records that was consistent with a history of genetic hearing loss. There was no documentation that a genetic hearing loss was proven through gene studies. Although it had been stated that genetic hearing loss was the most likely etiology of the Veteran's current hearing loss, this conclusion appeared to be unfounded and presumptive. There was no family history of a genetic hearing loss. The Veteran's father was a World War II gunner and his maternal grandmother lived alongside the railroad tracks. Even with these known sources of acoustic trauma, these individuals did not complain of problems with hearing until their 70s or 80s, which is also consistent with presbycusis. Overall, a genetic hearing loss remained unproven in the Veteran. Rather, Dr. Budoff reasoned that the Veteran's hearing loss could be attributed to the acoustic trauma that he incurred during service. He was exposed to sound levels way in excess of safe acoustic levels according to Occupational Safety and Health Administration standards. Such noise exposure causes acoustic trauma and was likely ("more likely than not") the cause of the Veteran's sensorineural hearing loss.

Accordingly, the case is REMANDED for the following action:

1. The Veteran's claims folder, including a copy of this remand and any relevant records contained in VBMS and the Virtual VA system, shall be referred to a board-certified otolaryngologist to review and provide an opinion as to the etiology of his current hearing loss and tinnitus.

The physician shall indicate whether it is at least as likely as not (50 percent probability or more) that the Veteran's current hearing loss had its clinical onset in service, had its onset in the year immediately following service, is related to his reported noise exposure in service, or is otherwise the result of a disease or injury in service.

The physician shall also indicate whether it is at least as likely as not (50 percent probability or more) that the Veteran's current tinnitus had its clinical onset in service, is related to his reported noise exposure in service, or is otherwise the result of a disease or injury in service.

In formulating the above opinions, the physician shall specifically acknowledge and comment on any hearing loss and tinnitus diagnosed since November 2006, the Veteran's reports of noise exposure in service associated with military weaponry and equipment with only occasional use of hearing protection, his explanations as to his family history of hearing loss (i.e., that although his father and grandmother had a history of hearing loss, his father was a gunner on a B-52 during World War II and his grandmother had lived alongside railroad tracks and that neither of these individuals reported any hearing problems until their 70s or 80s), his reports of a continuity of hearing loss and tinnitus symptomatology in the years since service, and all previous opinions of record as to the etiology of the claimed hearing loss and tinnitus. 

The opinion provider must provide reasons for each opinion given. The physician should comment on the medical opinions of record (as summarized in this document) and reconcile the opinion with them. 

The absence of evidence of treatment for hearing loss and tinnitus in the Veteran's service treatment records or for years after service cannot, standing alone, serve as the basis for a negative opinion. However, the opinion provider must also consider the inconsistent information concerning a continuity of hearing loss and tinnitus symptomatology since service.

2. If a benefit sought on appeal remains denied, the AOJ shall issue a supplemental statement of the case. After the Veteran is given an opportunity to respond, the case shall be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 



action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).